**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3191-18T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GLENNIS HARVE,

    Defendant-Appellant.

_____

Submitted December 7, 2020 – Decided January 05, 2021

Before Judges Fasciale and Rothstadt.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 14-09-1674.

Joseph E. Krakora, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Monica do Outeiro, Assistant Prosecutor, of counsel and on the brief; Katrina Koerner, Legal Assistant, on the brief).

PER CURIAM

Defendant Glennis Harve appeals from the January 4, 2019 denial of his petition for post-conviction relief (PCR) without an evidentiary hearing. For the reasons that follow, we affirm.

Defendant pled guilty to one count of third-degree distribution of marijuana, N.J.S.A. 2C:35-5(b)(11). In accordance with his plea agreement, the sentencing court imposed a one-year period of non-custodial probation on January 22, 2015. Defendant did not file a direct appeal from his conviction or sentence.

Defendant filed a PCR petition on December 7, 2017, in which he argued that he received the ineffective assistance of counsel (IAC) when his attorney, who he met for the first time when he pled guilty, advised him to accept the plea offer without ever discussing his "immigration status or any immigration consequences of" pleading guilty. According to defendant, if he had known that there were such consequences, he would not have accepted the plea offer.

In August 2018, PCR counsel filed an amended petition, a supporting brief, and certifications from defendant and his immigration attorney. In his certification, defendant stated that he felt rushed by his plea counsel into accepting the plea, he did not understand the charges against him, and his attorney never explained the State's case against him.

A-3191-18T1

Also, defendant admitted that during the plea hearing, he advised counsel and the court that he was a United States citizen, when in fact he was a permanent resident, having been born in Antigua, and not, as his plea form stated, a citizen born in "Neptune, N.J." He also confirmed that after he pled guilty, he informed probation too that he was a citizen and when asked by a probation officer where he was born, he also identified Neptune. According to defendant, he was confused by questions asking him about his citizenship, which he understood related to where he lived at the time, and if he had been asked where he was born, he would have responded that he did not know. Defendant reiterated that had he known of the immigration consequence to his plea, he "would not have entered into any plea that would have resulted in problems with immigration."

Defendant also acknowledged that at the time, he stated that he was satisfied with his plea counsel's services. However, he did so because he "was not aware of what better counsel could do for" him. Similarly, although he advised the plea court that he read and understood his plea form, he had not, as it was "basically filled out" by his attorney and he "just signed where [he] was told to." According to defendant he was emotional and confused throughout the process.

3

Defendant also stated that counsel did not discuss the case against him, and counsel's only advice was "that the plea was the best outcome" without ever discussing "any other possible outcome for" him. Defendant confirmed that he avoided jail time by accepting the plea.

According to defendant's immigration attorney, defendant's plea exposed him to immigration issues about which defendant stated he was not aware. Evidently, because the charge to which he pled guilty was considered by the immigration authorities to be an aggravated felony, defendant had been ordered to be deported.

In the brief filed on his behalf, defendant took a slightly different position. There, he argued that he accepted the plea without his plea counsel discussing the State's case against him or having "any meaningful discussion with [counsel] about the likelihood of success if he chose to go to trial." Also, defendant confirmed that he was not contending that his plea counsel "provided or even casually hinted at any immigration consequences of the plea he was to enter, nor did she provide any misinformation about the immigration effects of the plea."

The PCR court considered the parties' oral arguments on January 4, 2019 and then denied defendant's petition, placing its reasons on the record that day. In its decision, the court reviewed in detail defendant's responses to the

questions on the plea form, and to the plea court's questions when he pled guilty. The court observed that in addition to advising the plea court he was a citizen; defendant indicated the same on his plea form too. Moreover, defendant, who was twenty-three years old, a high school graduate who had almost completed his studies at a community college, confirmed he understood English, and could read and write English.

After reviewing the applicable law, the PCR court concluded that defendant failed to establish that plea counsel's "performance was deficient." The court found that defendant was "cloaking an immigration misadvise claim . . . as an [IAC] claim[,]" and that "[h]ad defendant told counsel his actual immigration status, a different plea may have been reached that would not have triggered defendant's deportation or the proceedings may have taken a different turn."

In addition, the PCR court observed that the plea court specifically asked defendant if he wanted more time to confer with counsel before pleading guilty and told him he was "free to do so." Based upon the totality of the circumstances, the PCR court rejected defendant's contention that he "believed citizenship meant where he lived," noting that the plea form not only asked if "defendant is a United States citizen," but that the question was followed by

5

additional "questions [that] discuss options in the event defendant is not a citizen."

The PCR court concluded by denying defendant's petition "[b]ecause . . . defendant's resulting deportation [was] the result of his failure to accurately represent his status rather than counsel's deficiency." For that reason, defendant failed to satisfy the "the first prong of [Strickland v. Washington, 466 U.S. 668, 687 (1984)]."

The court added that, but for the immigration consequences, defendant had no reason to complain about his plea agreement because since defendant was facing up to five years in prison if convicted, and his plea called for a noncustodial sentence, it was "exceedingly reasonable under the circumstances" to plead guilty. This appeal followed.

Defendant presents the following issue for our consideration in his appeal.

> POINT I
>
> [DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIM THAT HIS ATTORNEY RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO COMMUNICATE, VISIT, OR REVIEW OPTIONS WITH HIM, THEREBY FORCING HIM INTO A GUILTY PLEA; IN THE ALTERNATIVE, HE IS ENTITLED TO A REMAND ON THE MATTER BECAUSE THIS PCR COURT FAILED TO

6

ADDRESS HIS CLAIM, DENYING HIS RIGHT TO
PETITION FOR POST-CONVICTION RELIEF.

We are not persuaded by defendant's argument and affirm.

"Where, as here, the PCR court has not conducted an evidentiary hearing, we review its legal and factual determinations de novo." State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020).

To establish a PCR claim of IAC, a defendant must satisfy the two-pronged test formulated in Strickland, 466 U.S. at 687, and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), first by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," Id. at 52 (quoting Strickland, 466 U.S. at 687); then by proving he suffered prejudice due to counsel's deficient performance. Strickland, 466 U.S. at 687, 691-92. Defendant must show by a "reasonable probability" that the deficient performance affected the outcome. Fritz, 105 N.J. at 58.

This two-prong analysis applies equally to convictions after a trial or after a defendant pleads guilty. "[T]o set aside a plea based on IAC, 'a defendant must show that (i) counsel's assistance was not within the range of competence demanded of attorneys in criminal cases; and (ii) that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled

A-3191-18T1

guilty and would have insisted on going to trial.'" Aburoumi, 464 N.J. Super. at 339 (quoting State v. Nunez-Valdez, 200 N.J. 129, 139 (2009)); see also State v. Gaitan, 209 N.J. 339, 351 (2012).

Where a defendant who is pleading guilty is not a citizen of the United States, the extent of plea counsel's obligation to advise the client about immigration consequences depends upon whether it is apparent that deportation is a certain result. See Aburoumi, 464 N.J. Super. at 340; State v. L.G.M., 462 N.J. Super. 357, 365 (App. Div. 2020). However, the imposition of the obligation presupposes that counsel knows of the client's correct immigration status.

Applying these guiding principles, we are satisfied that defendant failed to make a prima facie showing IAC within the Strickland/Fritz test, substantially for the reason stated by the PCR court in its oral decision. Counsel and the plea court had the right to rely upon defendant's repeated misrepresentation of his immigration status. Without knowing defendant's true status, plea counsel was not obligated to address the immigration of defendant's plea.

Moreover, since defendant only argued in his PCR petition that had he known of those consequences he would not have pled guilty, we discern no other reason why defendant would not have accepted the plea offer even if he had

8

known through counsel the details of the State's case against him. Other than complaining that he became subject to deportation, defendant does not cite to any other reasons why he would have turned the offer of non-custodial probation to face a possible prison term of up to five years. In the end, defendant received the lowest possible probationary sentence of one year, N.J.S.A. 2C:45-2(a), without any time in jail. There is nothing in the record to demonstrate that the State's case against defendant was so weak that he would have gone to trial and faced years in prison.

Accordingly, without having established either Stickland/Fritz prong, the PCR court correctly concluded that an evidentiary hearing was not warranted. See State v. Preciose, 129 N.J. 451, 462-63 (1992).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION